UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY LOUISE TIMM,

            Plaintiff,           CIVIL ACTION NO. 10-cv-10594

     vs.

                       DISTRICT JUDGE GEORGE CARAM STEEH

COMMISSIONER OF         MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

            Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**    This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 8) be DENIED, Defendant's Motion For Summary Judgment (docket no. 11) be GRANTED and the instant Complaint dismissed.

                                             \*\*\*

**II.**  **PROCEDURAL HISTORY:**

      Plaintiff filed an application for disability and Disability Insurance Benefits with a protective filing date of January 19, 2007 alleging that she had been disabled since January 10, 1999 due to back and right leg impairments. (TR 11, 38, 92, 96). Plaintiff's date last insured is December 31, 2003[1]. (TR 38). The Social Security Administration denied benefits. (TR 39-42). Administrative Law Judge Regina Sobrino (ALJ) held a de novo hearing on July 8, 2009 and in a decision dated

---

[1] Plaintiff must prove her disability began prior to her date last insured in order to qualify for DIB. *See* 20 C.F.R. § 404.101(a); *Henley v. Comm'r of Soc. Sec.*, 58 F.3d 210, 213 n. 4 (6th Cir.1995) ("Insurability is a prerequisite to receipt of disability benefits but not to receipt of SSI benefits.").

August 28, 2009 found that the claimant was not entitled to a period of disability or Disability

Insurance Benefits because she was not under a disability within the meaning of the Social Security

Act at any time from January 10, 1999 through the December 31, 2003 date last insured.  (TR 11-

19).  The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the

instant action for judicial review.  (TR 1-3).  The parties filed Motions for Summary Judgment and

the issue for review is whether Defendant's denial of benefits was supported by substantial evidence

on the record.

### III.    TESTIMONY AND RECORD EVIDENCE

Plaintiff was 44 years old on the date last insured.  (TR 17, 92).  Plaintiff has a high school

education, completed two years of college and had training as a nurse assistant.  (TR 24, 101).

Plaintiff performed past work as a care giver and a nurse's aide.  (TR 97).  As a nurse's aide she

lifted as much as one hundred pounds, walked a total of four hours per day and stood a total of four

hours per day. (TR 97, 104).  Plaintiff reported a June 1998 injury at work when she caught a falling

patient and strained her back.  (TR 136).  Plaintiff reported that due to her impairments she has

lower back and leg pain and she cannot sit or stand for long periods of time.  (TR 96).  Plaintiff

reported that she stopped working on February 3, 2001 because she could not bend over.  (TR 96).

Plaintiff reported that she takes Darvocet and Ibuprofen for pain and takes Mobic and Skelaxin as

muscle relaxers. (TR 100).

Plaintiff's pain sometimes wakes her up and she rests in a recliner.  (TR 112).  Plaintiff can

prepare food with her husband's assistance and make sandwiches, she cannot lift anything from the

oven, she performs some light household chores with rest periods and she folds laundry.  (TR 112-

14).  She brings in the mail everyday and is able to feed her dogs and let them out of the house.  (TR

112-14).  Plaintiff reported that she needs no assistance or reminders to perform personal care and

2

grooming tasks or take her medications. (TR 112-14). Plaintiff reported that she does not drive due to her pain and because of her neck injury it is hard to turn her head. (TR 114, 116). She reported that she shops with her husband approximately twice per month for thirty minutes. (TR 114). She likes to read and watch television but reported doing so for "short periods" because she cannot sit very long. (TR 115). She sometimes watches movies or plays cards. (TR 115). Plaintiff reported that she cannot lift more than two pounds and can only walk half a block before resting for five to ten minutes. (TR 116). She reported that she does not have mental limitations. (TR 116). Plaintiff's additional testimony is set forth below in the Analysis.

The Vocational Expert (VE) testified that Plaintiff's past work as a nurse's aide was heavy in exertion and semi-skilled. (TR 33). The ALJ's hypothetical question to the VE contained all of the limitations in the ALJ's RFC for a limited range of sedentary work. (TR 34-35). The VE testified that such an individual would not be able to perform Plaintiff's past work, but could perform other jobs in the economy, including surveillance system monitor (550 jobs in the region defined as the lower peninsula of Michigan), information clerk (2,300 jobs in the region), order clerk (530 jobs in the region) and assembler (a reduced number of 1,100 jobs in the region). (TR 34, 37). The VE testified that none of these jobs require overhead reaching, an individual could use a cane when performing the job and typically, missing two days per month would lead to termination of the employee. (TR 35). The VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles. (TR 35).

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff last met the insured status requirements on December 31, 2003, had not engaged in substantial gainful activity from January 10, 1999, the alleged onset date, through her date last insured, and suffers from degenerative lumbar disc disease, neuropathy, obesity and a history of inguinal hernias, yet she does not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 13). The ALJ found that through the date last insured Plaintiff had the residual functional capacity to perform a limited range of sedentary exertion work. (TR 15). The ALJ found that Plaintiff was not able to perform her past relevant work yet she was able to perform a significant number of jobs in the economy and therefore she was not suffering from a disability under the Social Security Act. (TR 17-18).

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536

4

(6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

Plaintiff's Social Security disability determination was made in accordance with the five step sequential evaluation set forth at 20 C.F.R. section 404.1520(a)-(g). Plaintiff's only argument on appeal is that the ALJ erred at step three of the sequential evaluation in failing to conclude that Plaintiff meets or equals Listing 1.04A.

**B.    Discussion and Analysis:**

**1.    Determination That Plaintiff's Impairments Do Not Meet or Equal a Listed Impairment**

Plaintiff argues that her impairments meet or equal Listing 1.04(A), 20 C.F.R. Pt. 404, Subpt. P, App.1, 1.04 (2008) and that the ALJ erred by failing to obtain an opinion by an "agency approved physician" as to whether Plaintiff met or equaled the Listing.

At step two of the sequential evaluation, the ALJ found that Plaintiff suffers from the severe impairments of degenerative lumbar disc disease, neuropathy, obesity, and a history of inguinal hernias. 20 C.F.R. § 404.1520(c). Plaintiff does not challenge the ALJ's findings at steps one or two.

At step three of the sequential evaluation, "If a claimant's impairment satisfies the requirements of a listed impairment, the Secretary will find the claimant disabled without

5

considering age, education, and work experience." *Steagall v. Comm'r of Soc. Sec.*, 2009 WL 806634 (S.D. Ohio Mar. 25, 2009) (citing *Johnson v. Sec'y of Health and Human Servs.*, 794 F.2d 1106, 1110 (6th Cir.1986)). A claimant bears the burden of proving that he or she meets or equals a listing at step three of the sequential evaluation. *See Her*, 203 F.3d at 391. "In order to be found disabled based upon a listed impairment, the claimant must exhibit all the elements of the listing." *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir.2003) ("It is insufficient that a claimant comes close to meeting the requirements of a listed impairment.") (citations omitted).

The requirement of disability for a spinal disorder set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 states:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root (including cauda equina) or the spinal cord. With
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

In her decision, the ALJ specifically addressed the severity of Plaintiff's musculoskeletal impairments and whether they meet the criteria of Listing 1.04. The ALJ correctly pointed out that there was "no evidence of nerve root compression characterized by motor loss (atrophy with associated muscle weakness) and accompanied by sensory or reflex loss." (TR 15). Plaintiff in her brief concedes that the medical record does not support these two requirements of Listing 1.04. Plaintiff states in her brief that the "ALJ is correct, as noted above, that there is no evidence of motor loss or sensory/reflex loss." (Docket no. 8 p. 8). It is undisputed that the record does not contain

evidence of all of the requirements necessary to meet Listing 1.04. There is substantial evidence to support the ALJ's finding that Plaintiff's impairments did not meet Listing 1.04(A)[2].

Plaintiff's impairments do not meet all of the requirements for a Listing, however, pursuant to 20 C.F.R. section 404.1526, Plaintiff's impairment or impairments may be "medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526. There are three ways in which the Commissioner can find medical equivalence. In this instance, subpart (b)(1)(i)(A) applies, because Plaintiff does "not exhibit one or more of the findings specified in the particular listing." 20 C.F.R. § 404.1526(b)(1)(i)(A). The regulations provide that the Commissioner will find that Plaintiff's "impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 404.1526(b)(1)(ii).

Despite Plaintiff's argument to the contrary, the ALJ did not err in making the determination of whether Plaintiff's impairments meet or equal a Listing without a medical consultant. Under 20 C.F.R. section 404.1526(c) for evaluation of medical equivalance, the Commissioner considers "all evidence" in the record concerning the impairments and their effects on the claimant and "also consider[s] the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. § 404.1526(c). Section 404.1526(e) clearly states that "[f]or cases at the Administrative Law Judge or Appeals Council level, the responsibility for deciding medical

---

[2] Plaintiff's argument that the ALJ somehow erred by identifying that Plaintiff did not have spinal arachnoiditis with reference to surgical intervention or pseudoclaudication is without merit. The ALJ was merely stating that Listings 1.04(B) for spinal arachnoiditis and (C) for pseudoclaudication did not apply, not that these diagnoses are requirements to meet or equal Listing 1.04(A). (TR 15; Docket no. 8 p. 8).

equivalence rests with the Administrative Law Judge or Appeals Council." 20 C.F.R. § 404.1526(e). As Defendant argues, 20 C.F.R. section 404.906 allows special procedures to test modifications to the disability determination process, which are set forth in the Federal Register.  20 C.F.R. § 404.906(a), (b).  In Michigan the determination process uses a single decisionmaker, "in which a disability examiner may make the initial disability determination in most cases without requiring the signature of a medical consultant."  71 Fed. Reg. 45890-01, 2006 WL 2283653 (F.R.).  In the "single decisionmaker model" the "decisionmaker will make the disability determination after any appropriate consultation with a medical or psychological consultant."  20 C.F.R. § 404.906(b)(2). The decisionmaker is not required to do so in the instance of alleged impairments that are physical in nature.  *Id.* Therefore, the ALJ did not err in making the disability determination without a medical consultant.  As set forth below, the record contained sufficient medical records and evidence from which to make a determination.

Plaintiff also argues that she "meets or equals Listing 1.04A and that the ALJ erred in not properly evaluating all of the medical records of evidence."  (Docket no. 8).  Plaintiff makes this conclusory statement with no further attempt to develop her argument or identify any specific records which were not properly considered.

Despite Plaintiff's failure to develop this argument, the Court has reviewed the record in full and finds that the ALJ identified substantial evidence which supports her finding that Plaintiff did not have impairments medically equal to the criteria of Listing 1.04.  Not only do the parties and the ALJ agree that there is no evidence of motor loss and sensory or reflex loss, but the ALJ pointed out where evidence of other requirements of Listing 1.04 was not severe and/or resolved with time. Both the ALJ and the record show that Plaintiff's impairments and resulting symptoms and limitations are not of equal medical significance to the required criteria for Listing 1.04.  The ALJ

8

properly considered Plaintiff's obesity together with her other impairments in making the medical equivalence assessment.  SSR 02-1p; (TR 14-15).

 In June 1998 Plaintiff underwent an MRI of the lumbar spine which revealed "[m]ild lower lumbar spondylosis with small left paracentral L3-L4 herniated nucleus pulposus." (TR 140).  There was "[n]o nerve root compression or compression fracture."  (TR 140).  On examination, D.K. Bhrany, M.D., neurologist, reported that Plaintiff had positive straight leg raising at about 70 degrees on the right and negative on the left.  (TR 137). In the upper extremity Plaintiff had stretch reflexes of 0 to 1+, 2+ in the knees and 1+ in the ankles.  (TR 137).  There was no sensory deficit. (TR 137).  July 1998 physical therapy goals were met with a decrease in pain to one on a scale of 10. (TR 156-57).

On examination on August 20, 1998, Dr. Bhrany reported that Plaintiff had normal power and tone in the upper extremities, paraspinous muscle spasm in the lumbar region, bilateral straight leg raising was positive at approximately 60 degrees, stretch reflexes were 2+ in the knees, 2+ in the ankles and the plantars were bilaterally downgoing. (TR 135).  Plaintiff had no sensory deficits and was able to walk on her heels and toes, yet walked "gingerly," had restriction of forward flexion of the spine and could "barely bend forward."  (TR 135).  In August 1998 Plaintiff was treated with medications Daypro and Tylenol #3.

On August 28, 1998 Dr. Bhrany reported that an MRI of the lumbar spine revealed a "central/paracentral disc protrusion at L4-L5 on the right size, small in size" that "seems to slightly compromise the nerve root exiting at this level." (TR 13-14, 133).  Surgery was not recommended. Dr. Bhrany noted that the June 1998 disc protrusion at L3-L4 was "better" and it was no longer present in August 1998.  (TR 131, 153). Plaintiff underwent an August 31, 1998 examination with Mark C. Watts, M.D., who noted that Plaintiff had responded well to therapies, was back at work

9

and was virtually "pain-free" just before a second injury occurred about three weeks prior to the August examination and causing additional back pain and spasm.  (TR 147-49).

The ALJ also pointed out that by September and October 1998 Plaintiff showed improvement.  (TR 15, 139).  In September 1998 Plaintiff's physical therapist noted Plaintiff's report that she had been doing her exercises which "help" and Plaintiff's report that she had noticed the ability "to do a little more" but that she was unable to stand more than ten minute without radiating pain in the right leg.  (TR 146).  In September 1998 Dr. Bhrany noted Plaintiff continued to complain of discomfort in the lower back and pain radiating into the right leg.  Bilateral straight leg raising was positive, yet there was no loss of muscle function.  Plaintiff was "walking a little better but still has a paraspinous muscle spasm in the lumbar region."  (TR 132).  The doctor reported that Plaintiff has "improved in general."  (TR 132).  On October 23, 1998 Dr. Bhrany reported that it "may be helpful" for Plaintiff "to have a restriction of a less strenuous job where continuous bending and lifting is not required."  (TR 131).  He noted that Plaintiff is "slowly improving" and concluded that Plaintiff "may be eased into the full activities slowly over a period of two to three weeks because of the discomfort she is experiencing again when she went back to work."  (TR 131).

After October 1998, the record shows that Plaintiff was not seen again until August 2001, when she was examined by Silvia Seoane, M.D., for complaints of left costal pain.  A cardiac work-up was "normal."  (TR 196, 217-20).  The doctor diagnosed costochondritis "with new onset right bundle branch block probably incomplete" and prescribed Vioxx.  (TR 196).  In October 2001 Plaintiff's gall bladder was tested and a hepatobiliary scan revealed a low gallbladder ejection fraction.  (TR 200).  Plaintiff continued to be treated through 2001 until September 2003 with medication refills of Ultracet and Mobic through October 2004.  (TR 184).   In May 2002 Douglas

2:10-cv-10594-GCS-MKM   Doc # 12   Filed 02/14/11   Pg 11 of 16   Pg ID 307

F. Naylor Jr. M.D., diagnosed Plaintiff with bilateral inguinal hernias and advised her to "call" when she is ready to have them repaired; Plaintiff testified that she had them repaired. (TR 191-93). In September 2003 Dr. Seoane noted Plaintiff's report that she had an EMG "years ago" and that there was "a moderate amount of neuropathy." (TR 194). There is no medical record to support Plaintiff's report. Plaintiff was reported to be "in no acute distress." (TR 194).

As the ALJ and Defendant point out, the remainder of the medical record related to the period of time after Plaintiff's date last insured. In October 2006, Plaintiff reported neck pain that had started spontaneously a year ago prior, improved then increased again a month before the examination. (TR 222-24). An MRI revealed C5-C6 disc prolapse and an osteophytic complex nerve compression on the right side. (TR 223, 235). These medical records post date Plaintiff's date last insured and there is no evidence of neck and/or cervical impairment with onset prior to the date last insured. Similarly, Dr. Seoane completed a Medical Source Statement dated June 30, 2009, which refers only to cervical impairment diagnoses and gives no evidence of being related to the time period prior Plaintiff's date last insured. The doctor opined that Plaintiff can lift and/or carry less than ten pounds, stand and/or walk less than two hours and sit less than six hours in an eight-hour day and is mildly limited in pushing and pulling with the upper and lower extremities. (TR 237). The doctor concluded that Plaintiff's limitations would "disrupt a regular job schedule with lower physical demands" for a total of 100 out of 160 hours per month. (TR 237). There is no evidence that these limitations relate to the relevant time period prior to Plaintiff's date last insured.

The medical evidence of record is consistent with the finding that Plaintiff's does not medically equal a listed impairment. Plaintiff did not seek medical treatment, for back pain or otherwise, between October 1998 and August 2001. Even then, Plaintiff did not return to the doctor for back pain until 2003 and her treatment was conservative, including only medication, despite

prior improvement in 1998 with physical therapy. The ALJ's decision at step three is supported by substantial evidence.

**2.     The Remainder Of The ALJ's Decision Is Supported By Substantial Evidence**

Because Plaintiff's impairments did not meet or medically equal all the criteria of any one Listing the ALJ properly proceeded to the fourth step of the sequential evaluation to determine whether the Plaintiff's impairments or combination of impairments prevent her from performing her previous work or, at step five, whether she can perform any other work in the national economy. 20 C.F.R. § 404.1520(e)-(f). Plaintiff did not challenge the ALJ's findings at steps four and five. After a full review of the record and the ALJ's decision it is worth noting that the ALJ's findings at the remaining steps are also supported by substantial evidence.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. Both the ALJ's decision and a review of the records shows that the ALJ considered both the objective medical evidence in the record and considered the remainder of the record as required by the Regulations, to determine the credibility of the severity of Plaintiff's complaints of pain and other symptoms. *See* 20 C.F.R. § 404.1529(c)(2), (3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

The ALJ gave specific reasons for her credibility determination. SSR 96-7p. The ALJ pointed out where treatment, including medication, was relatively conservative and effective. In June 1998, following Plaintiff's injury, Dr. Bhrany reported that Plaintiff's pain was better, though not completely resolved, with Robaxin and Duract. (TR 136). In August 1998, Dr. Watts noted that medication, ice and stretching exercises were helping to alleviate "to some extent" Plaintiff's symptoms. (TR 16, 147). Plaintiff management was conservative and effective. In July 1998

12

physical therapy goals were met in all areas, including complaints of pain that were reduced to a one on a ten scale. (TR 156-57). Plaintiff was discharged from physical therapy in October 1998 after failing to show up for three sessions. (TR 139). Plaintiff testified that her medications helped with her pain despite sometimes causing an upset stomach. (TR 16, 30). The ALJ considered Dr. Seoane's note in August 2001 that Plaintiff was last seen in 1998, despite Plaintiff's alleging onset on January 10, 1999. (TR 16).

The ALJ addressed Plaintiff's testimony about her activities and reports of daily living. The ALJ noted that both were made long after the date last insured. The ALJ pointed out that in the February 2007 function report Plaintiff indicated that her limitations were due to lower back and neck injury. The ALJ found that there is no evidence showing symptoms or treatment of cervical disc disease until 2005 and 2006 respectively. (TR 17). The ALJ noted Plaintiff's report that she uses a cane to ambulate and could only sit or stand for fifteen minutes. (TR 16, 26, 27). The ALJ also noted Plaintiff's testimony that prior to the date last insured she was able to lift a gallon of milk. (TR 16, 25, 27). She does not drive and her husband assists her with household chores. (TR 16, 28). The ALJ pointed out that Plaintiff testified that she is most comfortable in a recliner and elevating her legs above chest level, yet the ALJ properly points out the record prior to the date last insured shows no report or recommendation of elevating her legs. (TR 16, 31-32). The ALJ properly explained her credibility determination which is based on a variety of factors and it is supported by substantial evidence in the record.

Plaintiff has not identified and the Court has not found evidence of record which the ALJ failed to consider which would have resulted in more restrictive limitations on Plaintiff's ability to work than those limitations set forth in the ALJ's RFC and Plaintiff has not raised this issue in her motion. The ALJ concluded that through the date last insured, Plaintiff had the RFC to perform a

13

limited range of sedentary work further limited to lifting, carrying, pushing and pulling only eight pounds occasionally and five pounds frequently, walking and/or standing two hours and sitting up to eight hours of an eight-hour workday, needing to alternate position for up to five minutes approximately every fifteen minutes, no climbing ladders or stairs, no kneeling, crouching or crawling, only rarely stooping, no overhead reaching, needing to avoid exposure to hazards and vibration, no operation of foot or leg controls, no driving as a work duty and needing to use a cane to walk.

The ALJ's RFC is far more restrictive than a Physical Residual Functional Capacity Assessment dated April 3, 2007 in which the medical consultant opined that Plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk for about six hours in an eight-hour workday and sit about six hours in an eight-hour workday and was unlimited in the ability to push and/or pull. (TR 226). The consultant opined that Plaintiff should only occasionally climb ladders, ropes and scaffolds buts could perform all other postural activities frequently. (TR 227).

As the ALJ pointed out, there are not more restrictive limitations of record for the time period prior to the date last insured. On October 23, 1998 Dr. Bhrany had opined that it "may be helpful" for Plaintiff "to have a restriction of a less strenuous job where continuous bending and lifting is not required." (TR 131). Dr. Bhrany also noted that Plaintiff would be able to "ease" back into full activities over the next several weeks. The Court finds that the ALJ's RFC is supported by substantial evidence.

In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which she finds credible and supported by the record and the ALJ did so. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). As set forth above, the

14

ALJ's RFC was supported by substantial evidence in the record and included the limitations supported by the record.  The ALJ presented all of the limitations of the RFC in his hypothetical question to the VE and the VE testified that such an individual would not be capable of performing Plaintiff's prior work, but that there are jobs available for a person with these limitations, which the VE cited in detail.  The ALJ properly relied on the VE's testimony at steps four and five to find that Plaintiff cannot perform her prior work yet there are significant numbers of jobs available which Plaintiff can perform.  The ALJ's decision is based on substantial evidence.

## VI.   CONCLUSION

The ALJ's decision is supported by substantial evidence, it was within the range of discretion allowed by law and there is insufficient evidence for the undersigned to find otherwise.  Plaintiff's Motion for Summary Judgment (docket no. 8) should be DENIED, Defendant's Motion for Summary Judgment (docket no. 11) should be GRANTED and the instant Complaint DISMISSED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of*

*the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 14, 2011       <u>s/ Mona K. Majzoub</u>
                             MONA K. MAJZOUB
                             UNITED STATES MAGISTRATE JUDGE

## <u>PROOF OF SERVICE</u>

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: February 14, 2011       <u>s/ Lisa C. Bartlett</u>
                             Case Manager

16